United States v. Safford

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of May, two thousand twenty.

PRESENT:  DENNIS JACOBS,
　　　　　　RICHARD J. SULLIVAN,
　　　　　　　　*Circuit Judges*,
　　　　　　JESSE M. FURMAN,
　　　　　　　　*District Judge*.*

---------------------------------------------------------------

UNITED STATES OF AMERICA,
　　　　　　　　*Appellee*,

　　　　v.　　　　　　　　　　　　　　　　No. 18-3284-cr

KEVIN A. SAFFORD,
　　　　　　　　*Defendant-Appellant*.

---------------------------------------------------------------

* Judge Jesse M. Furman of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLANT:    JAMES P. EGAN, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender, Syracuse, NY.

FOR APPELLEE:    CARINA H. SCHOENBERGER, Assistant United States Attorney (Michael S. Barnett, Assistant United States Attorney, *on the brief*), *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Mae Avila D'Agostino, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Kevin A. Safford appeals from a judgment of conviction following his conditional guilty plea to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A), and three counts of accessing with intent to view child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), for which he was sentenced to 24 months' imprisonment and 20 years' supervised release.  Safford challenges the district court's denial of his pretrial motion to suppress a warrant that deployed a search

2

program called the Network Investigative Technique (the "NIT warrant"), which was used to obtain Safford's identity. Safford also argues that the district court erred in denying his motion to dismiss the indictment, which he contends was obtained through outrageous government conduct, and he challenges two special conditions of his supervised release. We assume the parties' familiarity with the underlying facts, procedural history of the case, and the issues on appeal, which we note only to the extent necessary to explain our decision.

## I. Motion to Suppress the NIT Warrant

"On appeal from a district court's ruling on a motion to suppress, we review the court's factual findings for clear error." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015). "We review the court's legal determinations, including . . . the good faith of officers relying on a search warrant, de novo." *Id.* We find Safford's challenge largely foreclosed by this Court's opinion in *United States v. Eldred*, 933 F.3d 110 (2d Cir. 2019), which addressed the exact warrant at issue here and concluded that suppression was not required.

As in *Eldred*, even if we were to assume for the sake of argument that the warrant violated the Fourth Amendment, we would "ultimately conclude that . . . the good-faith exception applies." *Id.* at 115. Under this exception to the

exclusionary rule, evidence may be admitted if, in abiding by and executing a warrant, the agents acted with an objectively reasonable, good-faith belief that their conduct was lawful. *United States v. Leon*, 468 U.S. 897, 922 (1984). The exception does not apply, however, where the officer has no reasonable grounds to believe the warrant was properly issued. *Id.* at 923. The *Eldred* court squarely rejected several of the arguments Safford raises for why the exception does not apply here: namely, that the government acted deliberately, recklessly, or with gross negligence in seeking the warrant; that the warrant was so facially deficient that officers could not reasonably presume it to be valid; and that the warrant was void *ab initio*, rendering the good faith exception unavailable. *See Eldred*, 933 F.3d at 119–21. As to those arguments, *Eldred* controls, and we find them unpersuasive for the same reasons stated in that opinion.

Safford fares no better with his argument that the good faith exception does not apply because the warrant was so deficient of probable cause that no reasonable officer could have relied on it. Showing such deficiency "is a very difficult threshold to meet." *United States v. Falso*, 544 F.3d 110, 128 n.24 (2d Cir. 2008). Far from being bare-bones, the application and affidavit here detailed several objective facts supporting the existence of probable cause to believe that

4

anyone who logged into Playpen did so intending to view or trade child pornography. These included the "description of the images and text of Playpen's homepage, the warnings regarding a user's anonymity when a user registered an account, the nature of the Tor network" – which made it unlikely a user would come across Playpen without understanding its purpose or content – "and the content of the site." App'x at 179–80; *see United States v. Allen*, 782 F. App'x 21 (2d Cir. 2019) (finding probable cause to support the NIT warrant). On these facts, we cannot say that the warrant was "so lacking in indicia of probable cause" that an officer would have "no reasonable grounds" to believe the warrant was properly issued. *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

Relatedly, we reject Safford's contention that material misrepresentations in the application warranted a *Franks* hearing. Even assuming that law enforcement acted deliberately, the alleged misstatements Safford points to – that by the time the warrant issued, Playpen's logo had changed so it no longer matched with the affidavit's description and that the application misstated the extent to which Playpen was accessible through the traditional internet – would not have negated a finding of probable cause. *See Allen*, 782 F. App'x at 23 (noting that despite the new logo, "Playpen's major defining characteristics" described in the affidavit and

5

"additional indicia supporting probable cause" remained the same (internal quotation marks omitted)).

Safford advances another argument on the changed logo, which also lacks merit. He claims that the NIT warrant was an anticipatory warrant triggered when a visitor logged into the website "as described in the warrant application." Safford's Br. at 53. According to Safford, after the logo changed, the triggering event was rendered impossible, because the website no longer appeared as described. We find the government has the better argument and that the description of the images was provided as one factor in support of probable cause, not to identify the triggering event, which occurred upon logging into the site as identified by its URL. *See* Government's Br. at 29–30.

## II. Motion to Dismiss the Indictment

We review de novo a district court's ruling on a motion to dismiss an indictment alleging outrageous government conduct. *See United States v. Williams*, 372 F.3d 96, 112 (2d Cir. 2004). "To establish a due process violation . . . a defendant must show that the government's conduct is 'so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction.'" *United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011)

6

(citation omitted). The defendant's burden is "very heavy." *Id.* (internal quotation marks omitted). As the district court noted, "it appears that all courts that have considered the same due process challenge based on the NIT warrant have declined to dismiss the indictments in those cases." App'x at 172 (quoting *United States v. Kim*, No. 16-cr-191 (PKC), 2017 WL 394498, at *4 (E.D.N.Y. Jan. 27, 2017) (collecting cases)).

Despite those unfavorable precedents, Safford contends that the government's administration of Playpen amounts to outrageous conduct because it violated the rights of third parties, the victims of child pornography. However, the government – which did not create Playpen or encourage Safford to visit it – did not "actually cause[] the defendant to commit a crime that would otherwise have not been committed," which is "[a] necessary prerequisite for demonstrating that an undercover investigation violated the rights of third parties." *United States v. Chin*, 934 F.2d 393, 400 (2d Cir. 1991). And even if, as Safford argues, the government conceivably could have further mitigated harm caused by the website, we do not find that the conduct "shock[s] the conscience," particularly in light of the "well-established deference" we owe to law enforcement. *Al Kassar*, 660 F.3d at 121 (internal quotation marks omitted).

7

**III.     Conditions of Supervised Release**

Safford finally challenges two special conditions of his supervised release. The first restricts Safford from "go[ing] to, or remain[ing] at" places where children under 18 "are likely to be," absent permission from his probation officer. App'x at 253. The other prohibits him from "go[ing] to, or remain[ing] at, a place for the primary purpose of observing or contacting children under the age of 18." *Id.* Ordinarily, we review the imposition of a supervised release condition for abuse of discretion; however, because Safford did not object to the conditions at sentencing, we review his challenge for plain error. *United States v. Dupes*, 513 F.3d 338, 342–43 (2d Cir. 2008).

A district court "may impose special conditions of supervised release that are reasonably related to certain statutory factors governing sentencing, involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing, and are consistent with pertinent Sentencing Commission policy statements." *United States v. Myers*, 426 F.3d 117, 123–24 (2d Cir. 2005) (brackets and internal quotation marks omitted). The court did not err, plainly or otherwise, in imposing either condition, both of which are reasonably related to the statutory factors including the nature of the offense, Safford's

8

history, and the need for "adequate deterrence" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). Further, the record supports the district court's stated reasons for limiting Safford's access to minors. *See, e.g.*, App'x at 237–40 (district court noting the "hard core" nature of images found on Safford's computer, Safford's "addiction to pornography," and its concern that Safford would view criminal pornography when "people aren't watching").

The conditions are also not more restrictive than reasonably necessary. We disagree with Safford that the restriction on his going to places where children are "likely to be" renders the condition overly broad. In this context, we read that restriction as referring to places where children are "likely to congregate." Just as "'congregate' suggests some gathering of more than one, the use of the plural 'children' in the [challenged] condition . . . imports the same meaning." Government's Br. at 47–48; *see United States v. MacMillen*, 544 F.3d 71, 75 (2d Cir. 2008) (using the phrases interchangeably in explaining that the list of places following the phrase "likely to congregate" was "merely illustrative of . . . where children are likely to be"). Read in this way, the condition is akin to those we have upheld as "reasonably necessary" in similar circumstances. As to the other condition, we reject Safford's claim that the phrase "primary purpose" is

unconstitutionally vague. Persons of ordinary intelligence are capable of understanding that having the "primary" purpose of observing children differs from engaging in activities where observation is merely incidental or accidental. Moreover, supervised release conditions are generally "read to exclude inadvertent violations." *United States v. Johnson*, 446 F.3d 272, 281 (2d Cir. 2006). We therefore uphold the condition. *See United States v. Olsen*, No. 19-1104-cr, 2020 WL 1514742, at *2 (2d Cir. Mar. 30, 2020).

We have considered the rest of Safford's arguments and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court